IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WEST CHESTER DESIGN BUILD, LLC, d/b/a COCOON COMPANIES | : : : : | |
| Plaintiff, | : : | CIVIL ACTION No. 22-1911 |
| v. | : : | |
| PHILIP MOSES and ONE TWENTY ONE DESIGN & BUILD, LLC | : : : | |
| Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                 **October 27, 2022**

Plaintiff West Chester Design Build, LLC, d/b/a COCOON Companies, a home remodeling company, claims its former employee Philip Moses and his new business One Twenty One Design & Build, LLC ("121") tortiously interfered with its prospective business relationships and misappropriated trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and the Federal Defend Trade Secrets Act of 2016 ("DTSA"). COCOON also claims Moses breached his duty of loyalty to it and engaged in unfair competition when he started 121. Moses and 121 move to dismiss COCOON's tortious interference and misappropriation of trade secrets claims (Counts II-V of its Amended Complaint). The Court grants their motion with respect to COCOON's DTSA claim (Count V) and denies their motion in all other respects for the following reasons.

**I.      BACKGROUND**

COCOON employed Moses from March 2018 to November 16, 2021. (Am. Compl., ECF 7, ¶ 13.) At first, he was a Project Manager overseeing individual renovation projects. (*Id.* ¶ 15.) At the end of his first year, he moved to a "sales support role" where he shadowed COCOON's

Chief Executive Officer Chris Payson ("Payson") and trained on company processes and procedures. (*Id.*) After shadowing Payson, Moses started to take on a more senior sales role. (*Id.* ¶ 16.) Sometime around 2019, Moses "began to assume all responsibilities for sales and designs efforts for the company," evolving into a "Design Manager" who oversaw sales, design, interior selections, and estimating. (*Id.* ¶¶ 17-18.) He "was responsible for consulting and marketing efforts, lead intake, qualifications of customer leads, sales efforts, design process, and timeline and estimating accuracy." (*Id.* ¶ 18.) Eventually Moses was asked to serve on COCOON's leadership team with Payson, the company's Vice President Angela Payson, and one other employee who oversaw construction. (*Id.* ¶ 19.) By then, Moses was "deeply involved within COCOON's high-level discussions, strategy, and planning for the company." (*Id.* ¶ 20.)

In early 2020, COCOON hired Nathaniel Garrett as a Project Consultant. (*Id.* ¶ 21.) Before Garrett was hired, Moses had been his close friend and mentor and, when Garrett arrived at the company, Moses trained, supervised, and managed him. (*Id.* ¶¶ 22-23.) Garrett's job included "taking initial sales and qualification calls from prospective customers who reached out to COCOON for potential renovation projects." (*Id.* ¶ 39.)

Unbeknownst to Payson, sometime around October 13, 2021 Moses filed a Certificate of Organization for 121: his own company specializing in the design and build process that would directly compete with COCOON. (*Id.* ¶¶ 26-28.) Five days later, Moses submitted his verbal resignation to Payson and on November 16 he left COCOON. (*Id.* ¶¶ 24-25.)

Payson learned 121 had been working on projects that had first come to COCOON through COCOON's advertising when he saw 121's social media posts in January 2022. (*Id.* ¶ 35.) COCOON spends "hundreds of thousands of dollars annually on advertising" each year. (*Id.* ¶ 34.) Payson asked Garrett about 121's projects and Garrett "confessed" he had followed Moses's

instructions "to divert COCOON's customer contracting leads to Mr. Moses." (*Id.* ¶ 36.) Moses first approached Garrett with the idea of starting a business that would compete with COCOON in Summer 2021 and Garrett was "drawn to the idea of working with his mentor . . . ." (*Id.* ¶ 40.)

On or around October 2 (about two weeks before Moses submitted his resignation), Moses told Garrett to send him COCOON's customer leads so he could "drum up business" for the company he wanted to start. (*Id.* ¶ 41.) Moses instructed Garrett to tell prospective COCOON customers that the company "may not be the best fit," but he "had another individual in mind who could assist" and then provide Moses's contact information. (*Id.* ¶¶ 41-43.) Garrett did what Moses asked and sent him COCOON's customer contracting leads. (*Id.* ¶ 44.) Moses told Garrett he should not tell Payson what he was doing and that he should "lie to COCOON's leadership" if they asked him about the scheme. (*Id.* ¶ 46.)

Moses also "directly accessed and used confidential customer information from COCOON's customer relationship maintenance system" to obtain business for 121. (*Id.* ¶ 48.) Moses and 121 used information about COCOON's current and prospective customer projects to divert COCOON's customers. (*Id.* ¶ 49.) COCOON lists ten "reasonably probable" prospective contracts that Moses and 121 diverted from it, ranging from a $20,000 "miscellaneous house project" involving repairs for Elisabeth Lim to a $1,000,000 "large new construction project for Courtney Zimmerman." (*Id.* ¶ 52.)

COCOON alleges it has unique and independently valuable trade secrets in the form of "confidential, proprietary business documents, materials, information, and practices" developed during its fifteen-year history as a company that were "not accessible or easily recreated by other industry competitors." (*Id.* ¶¶ 58, 60.) Its alleged "Confidential Information" includes an Estimation Document in the form of a Microsoft Excel spreadsheet containing hundreds of

formulas that allows it "to capture and document the proposed scope of work being generated alongside the materials and labor costs associated with" it. (*Id.* ¶ 59(a).) Its alleged "Confidential Information" also includes Estimation Documents about specific projects "which were in the middle of the design process with COCOON;" a customer list maintained through its CRM system; materials relating to prospective business leads; a Construction Agreement form and accompanying exhibits dealing with payment schedules, scope of work, and other requirements; COCOON customized standards and templates used with design software including Chief Architect, 20/20 and AutoCAD; and COCOON's "Design Agreement"—a contract used to secure new customers and outline their anticipated scope of work, design intentions and target prices. (*Id.* ¶ 59(b)-(g).) The Confidential Information has "great value for any competing remodeling company or individual" and can be used to "vastly enhance the efficiencies of the design-build process[ ] . . . ." (*Id.* ¶ 75.) COCOON alleges it "used or intended to" use its Confidential Information "in interstate commerce." (*Id.* ¶ 121.)

COCOON avers it limited disclosure of its Confidential Information to authorized employees. (*Id.* ¶ 62.) Confidential Information is housed and filed on COCOON Microsoft based-cloud servers that only COCOON employees can access with passwords that expire every ninety days. (*Id.* ¶ 63.) COCOON employees are issued laptops to use as needed for outside-of-office work without removing Confidential Information from COCOON servers. (*Id.* ¶ 64.) Defendants do not allege COCOON's employees are required to sign non-disclosure or confidentiality agreements or that the company had a written policy governing use of Confidential Information.

Although Moses had no legitimate business need, he borrowed Garrett's COCOON-issued laptop on or around October 15, 2021 (two days after filing 121's Certificate of Organization). (*Id.* ¶¶ 66-67.) Garrett asked Moses why he needed the laptop and Moses said it was to "send himself

COCOON Estimates . . . without having it traced back to his own company laptop." (*Id.* ¶ 68.) The estimates are part of COCOON's Confidential Information which Moses knew or should have known was "confidential, sensitive, proprietary and not to be disseminated or used outside of COCOON's business." (*Id.* ¶¶ 65, 68.) COCOON alleges Moses "downloaded, transmitted, or otherwise obtained COCOON's Confidential Information from Mr. Garrett's laptop" and then "deleted the relevant internet browser history . . . to cover up his own digital footprint . . . ." (*Id.* ¶ 70.) The only deleted browser history "matched the span of time when Mr. Moses had borrowed Mr. Garrett's company laptop." (*Id.* ¶ 71.)

COCOON alleges Moses's use of or access to its Confidential Information provides Defendants "an unfair competitive advantage" by giving them immediate access to "the resources of a well-established company like COCOON." (*Id.* ¶ 76.) COCOON also maintains Defendants were able to induce multiple unidentified COCOON employees to transfer to 121 by using COCOON's Confidential Information. (*Id.* ¶ 77.)

**II.    STANDARD OF REVIEW**

To satisfy Federal Rule of Civil Procedure 12(b)(6), COCOON's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the Complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

### III. <u>DISCUSSION</u>

#### A. <u>Tortious Interference with Prospective Contracts</u>[1]

COCOON states a plausible claim for tortious interference with prospective contracts. To do so, COCOON must show: (1) an existing or prospective contractual relation between it and a third party; (2) Defendants' purposeful action, specifically intended to harm the contractual relationship; (3) the absence of privilege or justification; and (4) damages resulting from Defendants' conduct. *See Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). To show tortious interference with a prospective contract, COCOON must also allege "a reasonable likelihood that the relationship would have occurred but for [Defendants'] interference." *Id.* A prospective contractual relation "is something less than a contractual right, something more than a mere hope." *Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04-1235, 2005 WL 2233441, at *7 (E.D. Pa. Sept. 14, 2005) (quoting *Thompson Coal v. Pike Coal Co.*, 412 A.2s 466, 471 (Pa. 1979)). Defendants argue COCOON has not sufficiently alleged there was a reasonable

---

[1] The parties have stipulated to the dismissal of Cocoon's claim for tortious interference with existing business relations (Count III of the Amended Complaint). (ECF 17.)

6

probability that any alleged prospective contract would have been finalized with COCOON. (Defs.' Mem., ECF 11-1, at 8-10.)

Because "prospective relationships are 'not susceptible of a definite, exacting identification,' a plaintiff is not required to identify a potential contractual partner by name." *Synthes (U.S.A.)*, 2005 WL 2233441, at *7 (quoting *Kelly-Springfield Tire Co. v. D'Ambro*, 596 A.2d 867, 871 (Pa. 1991)). A "claim may proceed if supported by specific allegations about the universe of prospective counterparties and predicate actions indicating interference." *Wurth Baer Supply Co. v. Strouse*, No. 21-193, 2022 WL 4125082, at *8 (M.D. Pa. Sept. 9, 2022).

Moses and 121 argue COCOON's prospective interference claim should be dismissed because it has not alleged "the factual basis of how any alleged prospective contract was reasonably probable to develop into a contractual relationship" or any "improper action" they took that resulted in the loss of a prospective contract. (Defs.' Mem. at 8.) COCOON maintains it has set forth enough details at this stage of the litigation to show the required reasonable probability of prospective contracts. (Pl.'s Resp., ECF 13 at 12-13.) The Court agrees it has. COCOON alleges Moses directed Garrett to "divert customer contracting leads" to him without telling COCOON's leadership and that Moses "directly accessed and used confidential customer information from COCOON's customer relationship maintenance . . . system" to obtain customers for 121. (Am. Compl., ¶¶ 41-46; 48.) COCOON then specifically identifies ten individuals with projects that it describes as "reasonably probable" prospective contracts that Moses and 121 allegedly diverted from COCOON. (*Id.* ¶ 52.)

COCOON's allegations about whether there was a "reasonable probability" that its identified prospective—but not finalized—contracts would have materialized but for Defendants' alleged interference lack ideal specificity and detail, but at this early stage, are enough to nudge

7

its prospective tortious interference claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680; *see E. Frank Hopkins Seafood Co., Inc. v. Olizi*, No. 17-1558, 2017 WL 2619000 at * 5 (E.D. Pa. June 16, 2017) (finding allegations that the defendants used their access to confidential information to "entice[ ]" "anticipated customers" into contracts were sufficient to plead a prospective interference claim). The Court can reassess the claim's viability at summary judgment.

### B. Trade Secrets

To recover under the DTSA, 18 U.S.C. § 1836 et seq., COCOON must plead facts that establish (1) a trade secret exists; (2) the trade secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce"; and (3) Defendants misappropriated the trade secret. *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (internal quotation marks and citations omitted). The PUTSA, 12 Pa. Cons. Stat. § 5301 et seq., "protects against the misappropriation of trade secrets and the unjust enrichment caused by such misappropriation." *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 705 (E.D. Pa. 2014). It prohibits the

> disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

12 Pa. Cons. Stat. § 5302.

### 1. Interstate Commerce

Without more, COCOON's conclusory allegation that its Confidential Information "was used or intended to be used in interstate commerce" is not sufficient to sufficient to plead a claim for misappropriation of trade secrets in violation of the DTSA. COCCON's Amended Complaint does not identify any specific client or project it had outside of Pennsylvania or even generally

8

allege it serves clients in other states. *Cf. Asset Plan. Servs., LTD. v. Halvorsen*, No. 21-2021, 2022 WL 1104060, at *8 (E.D. Pa. Apr. 13, 2022) (finding the plaintiff sufficiently pleaded a trade secret was used in interstate commerce where it alleged that its "operations support persons that service nearly three hundred client households across more than twenty states"). COCOON's DTSA claim will be dismissed with leave to amend if it is able to allege sufficient facts (not conclusory allegations) to show its alleged Confidential Information was used in or intended to be used in interstate commerce.[2]

### 2. Existence of Trade Secrets

Next, the Court considers whether COCOON has pled the existence of a trade secret under the PUTSA. To do so, COCOON must sufficiently allege information that: (1) it "has taken reasonable means to keep secret;" (2) "derives independent economic value actual or potential from being kept secret;" (3) "is not readily ascertainable by proper means," and (4) "others who cannot readily access [ ] would obtain economic value from disclosure or use." *Teva Pharms. U.S.A., Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018). "The question of whether certain information constitutes a trade secret ordinarily is 'best resolved by a fact finder" after a full evidentiary presentation from each side. *Synygy, Inc. v. ZS Assocs., Inc.*, No. 07-3536, 2015 WL

---

[2] COCOON's remaining claims are based only on state law. "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). In this case, they do. First, in Defendants' Opposition to COCOON's Motion for a Protective Order, they note that COCOON's website states that it works in five Pennsylvania Counties and also in New Castle County, Delaware (i.e., in interstate commerce). (ECF 15-1 at 13 n.4.) Moreover, there is a pending motion to consolidate this case with *Moses v. COCOON and Payson* (E.D. Pa. Civ. A. No. 22-03151), which raises claims under the federal Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* (ECF 18.)

899408, at *9 (E.D. Pa. Mar. 3, 2015) (quoting *DSMC, Inc. v. Convera Corp.*, No. 479 F. Supp. 2d 68, 79 (D.D.C. 2007)).

COCOON must identify the subject matter of each trade secret with enough particularity "to separate it from matters of general knowledge in the trade or of special knowledge of persons skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Oakwood Lab'ys*, 999 F.3d at 906. "[C]ompeting policies protecting plaintiffs and defendants in trade secret misappropriation cases can make resolving this type of dispute difficult." *Id.* (citation omitted). "[C]are must be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be . . . ." *Id.* at 907.

Surely the Amended Complaint here "satisfies the notice requirement . . . ." *Rodgers Grp., LLC v. Lewis*, No. 22-482, 2022 WL 4095785, at *4 (D.N.J. Sept. 7, 2022). COCOON's alleged trade secrets include its estimation spreadsheet, materials about projects detailed within estimation documents, proprietary form construction and design agreements, its customer list, materials related to prospective business leads, and design-software created custom standards and templates "developed over its fifteen (15) year company history." (Am. Compl. ¶ 59.) Trade secrets need not be technical in nature to be protected under the PUTSA. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 112 (3d Cir. 2010). A trade secret "may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Rohm and Haas Co. v. Lin*, 992 A.2d 132, 143 (Pa. Super. Ct. 2010) (citation and internal quotations omitted). "Although items like customer lists do not automatically constitute confidential information, they do constitute trade secrets where the compilation of that information represents a 'material investment

of [the] employer's time and money.'" *AmQuip Crane Rental, LLC v. Crane & Rig Servs., LLC*, 199 A.3d 904, 915 (Pa. Super. Ct. 2018) (alteration in original) (quoting *Colteryahn Dairy, Inc. v. Schneider Dairy*, 203 A.2d 469, 473 (Pa. 1964)).

COCOON alleges its Confidential Information was created after "months/and or years of effort, experience, and hard work," that it "cannot be easily recreated by other industry competitors," and that it is "of independent value" and provides a "competitive advantage" to the company. (Am. Compl. ¶¶ 58, 60.) It contends Defendants were able to start a "'ready-made' competing company" with the Confidential Information. (*Id.* ¶ 77.) COCOON also alleges it took reasonable efforts to limit disclosure of its Confidential Information, explaining it was housed on servers accessible only to authorized employees with passwords that expired after ninety days, with employee laptops issued for any outside-of-office work requiring access to information on COCOON's password-protected servers. (*Id.* ¶¶ 62-64.)

Construing the Amended Complaint in the light most favorable to COCOON, its allegations are sufficient (if only) to plead that COCOON had trade secrets in Confidential Information that was not readily known, had independent economic value from being kept secret, and was subject to reasonable protections.

### 3.     **Misappropriation**

COCOON's allegations are also sufficient to show misappropriation of its alleged trade secrets. Misappropriation is "the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or the "disclosure or use" of a trade secret without the owner's consent by someone who used improper means to acquire the information. 12 Pa. Cons. Stat. § 5302(1). The Amended Complaint alleges Moses used Garrett's COCOON-issued company laptop on or about October 15, 2021 with the intent to "send

himself COCOON Estimates" and that he "downloaded, transmitted or otherwise obtained COCOON's Confidential Information" from the laptop. (Am. Compl. ¶¶ 66, 68-69.) COCOON also alleges Garrett sent Moses the company's customer contracting leads after he was asked to do so on or about October 2, 2021. (*Id.* ¶¶ 41, 44.) According to the Amended Complaint, Moses had no legitimate business need to take Confidential Information and he attempted to "cover up his own digital footprint" by "delet[ing] the relevant internet browser history from Mr. Garrett's COCOON-issued laptop . . . ." (*Id.* ¶¶ 67, 71.) At this stage of the case, this is enough to plead misappropriation.

The Court will deny Defendants' motion to the extent it seeks to dismiss the Company's PUTSA claim.

### IV.    CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion to dismiss COCOON's DTSA claims and denies their motions in all other respects.

An Order consistent with this Memorandum will be docketed separately.